When you approach the podium I'll try to remind you, however, you are responsible for keeping track of your time. One thing I should explain about the clocks is, which frequently confuses people and obviously there's a stress here in being an oral argument, but they count down and then they start to go up and a lot of times people think that they have that amount of time. When they start counting up you've gone in the red, you're in overtime and so you're done. But anyway, we'll call the first matter on calendar, that is Frank Gonzalez v. Phelps Dodge Miami 0616234 Good morning. Good morning. I'd request to reserve two minutes. May it please the court, my name is Nicholas Enoch with the law firm Illumina Enoch in Phoenix, Arizona, and I represent the appellants, which are the plaintiffs which I'll refer to herein for sake of simplicity. Actually, just real briefly, one of my clients actually traveled to San Francisco today from Globe, Arizona. This is Frank Gonzalez, the lead plaintiff in the case. Good morning, Mr. Gonzalez. At this juncture there does not really appear to be much of a dispute about the governing law, what the law is, the standards that apply. There also does not appear to be really any dispute about the underlying facts in this case. Your real issue is just whether the employee handbook is a planned document, right? Well, I would say no. Okay. What we have here is that the planned document under Section 1.3, moving quickly now, refers to written agreements. Likewise, the summary plan description refers to written agreements. The ‑‑ it's our position in the district court and in here that the written agreement being referred to in both the planned document and the summary plan description is, in fact, with respect to my clients, the Cypress employee handbook, which by its own terms defines it as a binding agreement between the employees and Phelps Dodge. So that is the written agreement that's being referred to directly in there. The two points about the employee handbook which are undisputed, but in our estimation important for this Court in determining whether these benefits vested are as follows. First of all, the employee handbook is not your typical employee handbook that I see in my practice probably what this Court sees on appeal. Most employee handbooks have qualifying language in it, which is nothing contained in herein should be construed as providing contractual rights or anything other than a statement of policy. This is 180 degrees from that. What we have here is a very unique so‑called handbook, which by its own terms defines it as a binding agreement between Phelps Dodge and the employees. As such, many of the cases that we all have reviewed dealing with handbooks and statements and handbooks are really somewhat inapplicable because those handbooks in most instances are these kinds of vague, well, not vague, but by their own terms have qualifying language. This is the opposite of that. And in this handbook, what it says is that these are your benefits. These will be provided to you under certain circumstances. And in these circumstances which did arise in this case, the benefits were not provided. So other than the ‑‑ assuming the employee handbook is a plan document, what specific rights does it vest in the employees other than the existing severance plan? That is what it would provide. But it does have a couple additional qualifications to it, which is the employee handbook also states that whatever benefits are in effect at that time or that are delineated in the handbook will govern your relationship at any given point in time. It is undisputed that at the day that my clients were laid off in the beginning of January 2002, that employee handbook was in effect. That was the operative document governing their relationship with Phelps Dodge. It was the binding agreement. That binding agreement said that in those circumstances there will be a severance plan to cover that circumstance. And needless to say, there was no severance plan because sometime, you know, a little over a year before, Phelps Dodge got rid of it and in so doing didn't even tell my clients that it was gone, which gets to the second point, which is what does the handbook provide? The handbook in another section which we refer to provides that you will be notified of any changes in the conditions and any changes to this handbook. My clients never received notice that their severance plan disappeared. They continued to work during that period of time not knowing that the special severance payment committee for Phelps Dodge had pulled the rug out from underneath the plan, you know, just shortly over a year before. So that's what that employee handbook provides. It provides two things. One is that there is in existence a severance plan. And second of all, if Phelps Dodge is going to make a change to that, we're going to notify you that there has been such a change. Now, I assume that my friend Mr. Brockman is going to say, well, actually these employees were notified that it was pulled away. Actually, what they were notified of was a new set of benefit plans that were coming in. No mention in any of that literature was made about the severance plan going away. No mention was made during the introductory meetings about the new benefit plan, about the severance plan disappearing. What you had was Phelps Dodge ruled out its new benefit plans and said, you're going to get benefit A, B, and C. No mention was made of the severance plan that it existed, was gone, or anything else. My clients, as a party to a binding agreement with Phelps Dodge, could only be left to assume that this severance plan was still in existence. And I would suggest that it was. It should have been still in existence. MS. GOTTLIEB I have a question. MS. GOTTLIEB Oh, go ahead, Judge Farr. MS. GOTTLIEB Oh, I'm sorry. I'm sorry that I can't be with you in San Francisco today, but there are matters that keep me in Phoenix, so I appreciate appearing by video. I do, does it make any difference that your clients were originally employed by Cypress Miami and that the handbook was Cypress Miami's plan and then Phelps Dodge took over and imposed its own plans? No, it's not. And I don't even think that's in dispute. Through the course of discovery, it was established that Phelps Dodge assumed all of the liabilities, responsibilities, and contractual obligations with respect to their acquisition of Cypress. And along those lines, the Cypress handbook, it's also undisputed, was the operative document in effect at Phelps Dodge Miami, I believe, until early 2002. And when I say early, I'm talking about the March to May period of time, which was a few months after my clients had been separated. So right up until that period of January 2nd, I believe, through 14th, 2002, the Cypress employee handbook was still the document that my clients were told was the operative binding agreement governing their relationship with Cypress and then later with Phelps Dodge. So that the language in it that says, just let me follow up for one second, that the changes in determining the plan is operative as well? Well, the, yes, it would be. But the fact is, that never happened. The employee handbook was never, that binding agreement was never revised during the period of time that my clients worked there. So you are correct. We would have a different factual circumstance, which we are not presented with here, which is that Phelps Dodge in November of 2001 would say, we are now amending the Cypress handbook and we are eliminating the severance plan. That would be a different case. We don't have that. What we have here is that handbook that you're looking at was never modified during the period of time that my clients worked at Phelps Dodge. Okay. Do you want to reserve the balance of your time? Yes, I would. Thank you so much. Thank you. Good morning. Good morning. May it please the Court, my name is Kent Brockleman. I'm from the firm of Coppersmith Gordon Shermer and Brockleman in Phoenix, Arizona, and I represent the appellee Phelps Dodge, Miami. Let me go directly to a couple of points that came up during Mr. Enoch's argument. First, he mentioned that I'm going to argue that the plaintiffs actually got notice. We do believe they got notice, but that's not relevant to this appeal. The only ERISA issue before this Court is whether Phelps Dodge properly terminated the severance plan, the ERISA severance plan at issue. Notice is not a requirement under ERISA for a proper termination of a severance plan. The Ninth Circuit has ruled that notice can be, under certain circumstances, relevant to a breach of fiduciary duty claim under ERISA. That is not a claim that the plaintiffs brought in this case. They sought to amend, to file a third amended complaint at the end of the case, and that motion was denied. Notice is simply not relevant. We do believe they had notice, but I'm not going to talk about that. The second point I want to address that came up during Mr. Enoch's argument, Judge Callahan, is your opening question about whether the employee handbook is a planned document. We do think that that's critically important in this case. ERISA sets forth two kinds of formal plan documents, the statute itself. It says that the plan must be established pursuant to a written instrument, you know, the plan itself, and you have to have a written summary plan description to communicate the terms of the plan to the employees. Those are the formal plan documents contemplated by ERISA. Well, I didn't want to say, I'm sure he'll respond to this in rebuttal, but my understanding is that an ERISA plan document has to provide a policy and a method for funding the plan, describe a procedure for plan operation and administration, provide a procedure for amending the plan, and specify a basis for payments to and from the plan. Now, can you address that relative to the employee handbook? Yes, Your Honor. The employee handbook simply does not address those points, and those were the points I was going to go to, Nick. You're exactly right. There is no policy and method for funding the plan. There is certainly no statement of the administrative procedures, how you go about seeking severance benefits, all the kinds of things that a plan has, how the plan would be funded, the basis for payments. The entire administrative scheme that is set forth in the plan itself is not contained in the employee handbook. The employee handbook says the severance plan, which the district court found was an ERISA plan, applies when you get laid off under certain circumstances. Please see your benefits booklet for more details about all of our welfare benefit plans. The benefits booklet was the SPD. That's all it says. That is not a plan document. It's not even close to being a plan document, nor is it an SPD. An SPD requires 12 different items be in it, and we've cited that in our brief. What do we do about the fact that the employee handbook clearly represented what the severance requirements were, and the fact that the employee here, as other employees, relied upon that as being what would happen if there was severance? Well, Your Honor, in direct answer to that question, the employee handbook said the severance plan applies under certain circumstances. See the severance plan documents for more details, and those details included the termination rights. And so whatever rights they had under the severance plan were always subject to the severance plan's termination rights. And in fact, let me address this Court's decision in scenario. Obviously, there's, you know, I mean, obviously there's a terribly sympathetic situation on the other side. So that's, but there's the law, and, you know, we obviously have to look at the law. Well, let me address the sympathy factor then, Judge. The plaintiffs claim that the document that establishes their vesting rights is the employee handbook. There's only two ways in which the employee handbook can possibly be relevant to this action. That's if the employee handbook is a planned document, or if the planned documents are ambiguous on the subject of termination, then you look at documents outside the plan to see if they shed light on the right of the sponsoring party to terminate. And that's the whole thing. Quite a bit for an average employee to have to do, isn't it, to reference something else, some other document he probably doesn't have? It does strike me as being very unfair. Well, Your Honor, they did have the SPD. And the handbook says, go look at your benefits booklet for details of the plan. And the SPD was distributed to all the employees, and that's not disputed in this case. And the SPD contained clear termination rights. SPD. The summary plan description, which was the benefits booklet that described all the welfare benefit plans. I just hate acronyms. Okay. The summary plan description, Your Honor. And that's stated in three separate places that the sponsor has the right to terminate. You know, the Sinelli case that this Court decided really controls the outcome here. And the Sinelli case had, if you will, much more sympathetic facts for the employee. There, the Board of Directors actually adopted a resolution expressly providing for vesting, stating the intent that they were going to provide vesting rights in the life insurance plan. And they sent a letter to the plaintiff saying, we've done that. You're going to have vested rights. But the underlying plan documents themselves were never modified or changed, and they had unambiguous termination rights. And this court, in considering those facts, set out the test that vesting must be found in the plan documents and then set out a two-part test to consider that. Is the document that allegedly provides for vesting a plan document? And if it's not, are the plan documents ambiguous? So we can consider these, the board resolution. We consider the letter informing this guy that he was going to have vested rights. And the court said, no, the board resolution is not a plan document. There's a plan. There's an SPD that this is not a plan document. So the plan documents were unambiguous, and these claims have to fail. And, you know, on the fairness front, there's all sorts of cases out there that talk about congressional intent here, that they want to encourage employers to have these kinds of welfare benefit plans. They're not required at all. And so they want, Congress wanted to make it very clear that the obligations of the employer would be governed by the plan documents. And the employer can obligate itself to vesting if it wants to do so. But if it unambiguously reserves to itself termination rights, then the employer can terminate. And where is it ever told to the employee in plain, simple language that you're vesting rights with regard to the plan documents? This sort of thing, they are going to be terminated if something happens. If the new employer or the existing employer decides to terminate, where does it ever say that? It's up to the employer. Well, there would be multiple places. Judge Hugg, they would be in, now, I agree that they may never have looked at the plan itself, but the plan itself does have the unambiguous termination provision that we cited. But the summary plan description, not to use the term SPD, the summary plan description does contain three separate statements that the sponsor can terminate these welfare benefit plans at any time. And I think that that's stated in very clear language in the summary plan description. The record reference, Judge, is our supplemental excerpts of records, page 15, page 20, and page 21. In those three places in the summary plan description, the employees are told these plans can go away any time, any reason the company wants to do that. Counsel, I didn't hear your answer to Judge Hugg's question about the notice. And I'm not sure I understand your position with respect to notice. Assuming they didn't get any notice, does the plan say that we can terminate this without ever telling you that we've done it? There are two separate notice questions, Judge Schroeder. I perceived Judge Hugg's question to have to do with when, whether the employees were told that the company had the right to terminate, not that the plan had actually been terminated. The employees were told that the company had the right to terminate in the summary plan. Okay. I understand your position with respect to that. What is your position with respect, they never told them that they were terminated and that they relied on there being an effect? Right. My position on that is that notice is not a requirement for an effective plan termination under ERISA. We believe they were provided with notice, but that was simply not an issue that was decided by the district court because it's not a requirement of an effective plan termination under ERISA. And notice may be relevant to a breach of fiduciary duty claim under ERISA, but that's not a claim that was brought here. So we believe there's plenty of evidence that got notice, but it just was not decided by the district court and it's not on appeal. I see I'm out of time. Happy to answer any other questions. Judge Schroeder, did you have other questions? There don't appear to be other questions. Thank you for your argument. Thank you again. We're not looking for a ruling based on sympathy or emotion. We're looking for a ruling based on the law. The law, as Mr. Brockman pointed out in Sinelli, which we also agree would be illustrative, is in Sinelli you had a board resolution making a promise. We have here a written agreement, a binding agreement in writing, which is totally different than a board resolution. This is a binding agreement by its own terms. I like the fact it refers to the summary plan description. Well, the summary, both Section 1.3 of the plan and the summary description. First of all, the plan itself, at page 13 of our excerpts of records, says that you're going to get certain benefits provided, the like, and then it says, except where an individual employee has, pursuant to written agreement, been granted seven benefits different than those herein, where such a guarantee exists, this plan shall have no application. So he refers to Section 3.1 of the plan as permitting a, the termination of a plan. However, in a different section of the same plan, they're referring to the written agreement. Likewise, in the summary plan description, which is page 15 of the excerpts of record, it says the following, quote, anything in this binder that is inconsistent with plan documents and contracts will be superseded by and governed by the plan documents and contracts. The contract is the employee handbook, which is a binding agreement. That handbook says that that severance plan will be in effect in the instance that they are terminated for business reasons. That binding agreement was never modified to the last day that my clients worked at Phelps Dodge. So getting to your question, the summary plan description and the plan documents themselves expressly refer to circumstances dealing with contracts and written agreements. All right. Thank you for your argument. Thank you. This matter will stand submitted. Thank you both for your argument in this matter. United States of America v. Cesar Mondragon Martel, case number 07-1024.
judges: Hug, Schroeder, Callahan